AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) |
| v. | ) |
| EARNEST LEE COLEMAN | )   Case No. |
| | )   Mag. No. 19-354 |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

2019 SEP 24 P 3: 32

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 12, 2018__ in the county of __Jefferson__ in the __Northern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a controlled substance |
| 21 U.S.C. §331(i)(2) | Possession of a punch, die, plate, etc. to produce a counterfeit drug |
| 21 U.S.C. §331(i)(3) | Holding for sale or dispensing a counterfeit drug |

This criminal complaint is based on these facts:

(see attached)

☑ Continued on the attached sheet.

*Complainant's signature*

Michael Rothbard, FDA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __09/24/2019__

*Judge's signature*

City and state: __Birmingham, Alabama__   John E. Ott, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Michael Rothbard, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint as to **EARNEST LEE COLEMAN** (**"COLEMAN"**) for violations of 21 U.S.C. § 841(a)(1), Possession with intent to distribute a controlled substance, and 21 U.S.C. §§ 331 and 333, related to holding for sale or dispensing a counterfeit drug and possession of a punch, die, or plate to produce a counterfeit drug, as further detailed below.

2. I am a Special Agent with the U.S. Food and Drug Administration's Office of Criminal Investigations ("FDA/OCI"), and have been since February of 2014. I am presently assigned to the Birmingham Office investigating violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399i (the "FDCA"). I am an investigative and law enforcement officer of the United States, in that I am empowered under authority of the FDCA to conduct investigations and to make arrests. In my capacity as an FDA/OCI Special Agent, I have received extensive training in the investigation of the counterfeiting, diverting, misbranding, adulterating and tampering of drugs and medical devices. In addition, I have fourteen years of prior combined law enforcement experience as a Special Agent with the United States Secret Service and as a deputy in the State of Florida with the Palm Beach County Sheriff's Office. During this time, I received extensive training in investigations of computer crimes, internet investigations, counterfeit currency, check fraud, bank fraud, money laundering, access device fraud and identity theft, among other things.

3. This affidavit is being submitted in support of a criminal complaint and arrest warrant and does not include all the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested complaint and arrest warrant.

4. The facts in this affidavit come from my personal observations and knowledge of the investigation, observations of other law enforcement officers involved in this investigation and

information obtained from other agents and/or law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

## OVERVIEW OF SELECTED APPLICABLE STATUTES

5. The FDA is the federal agency responsible for protecting the health and safety of the American public by ensuring, among other things, that drugs are safe and effective for their intended uses and bear labeling that contains true and accurate information. FDA's responsibilities include regulating the manufacture and distribution of drugs, including prescription drugs, shipped and received in interstate commerce, as well as the labeling of such drugs. FDA carries out its responsibilities by enforcing the FDCA and other pertinent laws and regulations.

6. The FDCA defines a "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," and "articles…intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(g)(1)(B) and (C).

7. Under the FDCA, a "counterfeit drug" is defined as: "a drug which…without authorization, bears the trademark, trade name, or other identifying mark, imprint, or device, or any likeness thereof, of a drug manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such drug and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other drug manufacturer, processor, packer, or distributor." 21 U.S.C. § 321(g)(2).

8. A drug is deemed to be "misbranded" if, among other things, its labeling is false or misleading in any particular. 21 U.S.C. § 352(a).

9. The FDCA prohibits doing or causing the following acts:

2

    a.    Doing any act to a drug, after the drug or its components have shipped in interstate commerce and while such drug is held for sale, that results in the drug being adulterated and/or misbranded, 21 U.S.C. § 331(k);

    b.    Knowingly and intentionally adulterating a drug, such that the drug is adulterated under Title 21, United States Code, Sections 351(a) –(d) and has a reasonable probability of causing serious adverse health consequences or death to humans, 21 U.S.C. § 333(b)(7);

    c.    Making, selling, disposing of, or keeping in possession, control, or custody, or concealing any punch, die, plate, stone, or other thing designed to print, imprint, or reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of any of the foregoing upon any drug or container or labeling thereof so as to render such drug a counterfeit drug, 21 U.S.C. § 331(i)(2); and

    d.    The doing of any act which causes a drug to be a counterfeit drug, or the sale or dispensing, or the holding for sale or dispensing, of a counterfeit drug, 21 U.S.C. § 331(i)(3).

10. Norco®, which contains the active pharmaceutical ingredients hydrocodone bitartrate and acetaminophen, was an FDA-approved prescription drug indicated for treatment and management of pain severe enough to require an opioid analgesic. Allergan plc was the pharmaceutical company that had the exclusive right to manufacture Norco® for distribution within the United States.

11. Xanax®, which contains the active pharmaceutical ingredient alprazolam, was an FDA-approved prescription drug indicated for the treatment of anxiety or panic disorders. Pharmacia & Upjohn, Co., a division of Pfizer, Inc., had the exclusive right to manufacture Xanax® for distribution within the United States.

12. Actavis Elizabeth, LLC ("Actavis") manufactured and distributed in the United States round, green tablets containing 15 mg of oxycodone hydrochloride each and stamped with "A 214" on one side. Actavis's oxycodone was an FDA-approved prescription drug indicated for

the management of moderate to severe pain where the use of an opioid analgesic was appropriate.

13. Rhodes Pharmaceuticals L.P. ("Rhodes") manufactured and distributed in the United States round, white tablets containing 325 mg of acetaminophen and 10 mg of oxycodone hydrochloride each and stamped with "10 325" on one side and "RP" on the other. Rhodes's acetaminophen/oxycodone was an FDA-approved prescription drug indicated for the relief of moderate to moderately severe pain.

14. Greenstone, LLC ("Greenstone") manufactured and distributed in the United States oval, orange tablets containing 0.5 mg of alprazolam and stamped with "G3720" on one side. Greenstone's alprazolam was an FDA-approved prescription drug indicated for the treatment of anxiety and panic disorders.

15. Watson Pharmaceuticals, Inc. ("Watson") manufactured and distributed in the United States round, white tablets containing 350mg of carisoprodol and stamped with "DAN" on one side and "5513" on the other. Watson's carisoprodol was an FDA-approved prescription drug indicated for the relief of discomfort associated with acute, painful musculoskeletal conditions in adults.

## COLEMAN'S VIOLENT CRIMINAL HISTORY

16. In October 2000, **COLEMAN** was arrested in Jefferson County, Alabama, on state murder charges. **COLEMAN** thereafter pleaded guilty to a felony manslaughter charge and was sentenced to five years' probation. As a convicted felon, **COLEMAN** is prohibited from possessing firearms under federal law.

## FACTS ESTABLISHING PROBABLE CAUSE

17. In conjunction with your affiant's official duties, your affiant has conducted an investigation into the intentional adulteration of a drug, manufacture/possession of controlled

4

substances with intent to distribute and holding for sale/dispensing counterfeit drugs by an individual identified as **COLEMAN**.

18. On or about April 5, 2018, Officers/Troopers with Alabama Law Enforcement Agency (ALEA) Narcotics were contacted by Special Agent Bryant Rogers with the United States Department of Homeland Security (HSI) regarding an international mail package that had been intercepted in Los Angeles, California, by Customs and Border Protection (CBP) officers. The package was being shipped from China and was addressed to **COLEMAN** at 3300 Berkley Avenue, Bessemer, Alabama (hereinafter the "**SUBJECT PREMISES**"). Agents with CBP had searched the package pursuant to United States Customs laws and had located a plastic bag which contained two (2) metal dies, and a metal mold which were designed to be used in a pill press for the production of pressed tablets or pills. The dies were embossed on one die with the numbers 48 and 12 with a scoring mark between them, and on the other die with a check mark that can be described as resembling a "square root symbol". CBP agents conducted an open source internet search for the type of pill that would be created by this type of die/press combination. The search revealed that this die/press was associated with "Oxycodone Hydrochloride" which is a Schedule II controlled substance. Special Agent Rogers requested the assistance of ALEA to conduct a controlled delivery of the package to its intended recipient, in an effort to further the criminal investigation.

19. On or about April 12, 2018, Officers/Troopers with the ALEA executed a state search warrant at the **SUBJECT PREMISES**. When ALEA Officers/Troopers first entered the **SUBJECT PREMISES**, **COLEMAN's** girlfriend, **TASHANA LYNN SIMS** who also resided at the **SUBJECT PREMISES**, was found standing in the living room armed with a Glock 22 .40 caliber pistol. ALEA Officers/Troopers diffused the situation and **SIMS** relinquished the weapon.

5

20. During execution of the state search warrant at the **SUBJECT PREMISES** the below-listed items were seized:

    a. Pill press machine

    b. 80 counterfeit Norco® tablets (embossed with NORCO 539)

    c. 136 counterfeit Actavis's Oxycodone Hydrochloride 15mg tablets (embossed with A 214)

    d. 48 counterfeit Rhodes's Acetaminophen/Oxycodone tablets (embossed with RP on one side and 10 325 on the other)

    e. 76 counterfeit Greenstone LLC's Alprazolam 0.5mg tablets (embossed with G3720)

    f. 112 counterfeit Watson Pharmaceutical's Carisoprodol 350mg tablets (embossed with 5513 on one side and DAN on the other)

    g. Die cast/punch to counterfeit Allergan's Norco® (hydrocodone bitartrate/acetaminophen) tablets – stamped NORCO 539

    h. Die cast/punch to counterfeit Actavis's Oxycodone tablets – stamped A 214

    i. Die cast/punch to counterfeit Rhodes Pharmaceuticals L.P.'s Acetaminophen/Oxycodone hydrochloride tablets – stamped 10 325/RP

    j. Die cast/punch to counterfeit Pfizer's Xanax® (alprazolam) tablets – stamped Xanax 1.0

    k. Die cast/punch to counterfeit Watson's Carisoprodol tablets – stamped 5513/DAN

    l. Suspected cocaine and heroin, recovered from a kitchen cabinet along with suspected binding agents and a Springfield .45 caliber firearm.

21. In addition to the above-listed items, ALEA Officers/Troopers also found and seized body armor as well as nine firearms, which are listed and pictured below:

    a. DPMS .223 caliber rifle

    b. VEPR-12 shotgun

    c. Ruger .22LR pistol

    d. FN 5.7 pistol

    e. Glock 21 .45 caliber pistol

  f.  Colt LE .223 caliber rifle

  g.  HK HK416 .22LR pistol

  h.  Glock 22 .40 caliber pistol

  i.  Springfield XD .45 caliber pistol



22. On or about April 12, 2018, **COLEMAN** was advised of his <u>Miranda</u> Rights and agreed to be interviewed. During the interview, **COLEMAN** stated that approximately one year prior he ordered a pill press from a Chinese web site. He stated he paid about $400 for the press and it was delivered to his house by DHL. **COLEMAN** stated it took several months to figure out how to use the press but he estimated that he became proficient and started selling pills about eight (8) months prior to the interview. **COLEMAN** stated the only ingredients he used for the pills were Tylenol, and he never ordered any active ingredients or binding agents. **COLEMAN** stated he purchased die casts for the following name-brand drugs: Lortab, Adderall, Soma, Xanax, Ecstasy, Oxycodone, and OxyContin. **COLEMAN** stated he pressed these pills using Tylenol,

but in the case of the Adderall pill he added sugar and caffeine. **COLEMAN** stated he sold these pills on the street as the authentic pharmaceutical drugs.

23. On or about April 12, 2019, your affiant requested FDA's Forensic Chemistry Center (FCC) to conduct additional analysis on items seized from the April 12, 2018, state search warrant, specifically, tablets with the "A 214" imprint which are used legitimately for Actavis's 15 mg Oxycodone Hydrochloride. According to FCC, the round green tablets embossed with "A 214" on the bisected side did not contain Oxycodone Hydrochloride, but did contain Acetaminophen, Fentanyl, Heroin, and Papaverine. Heroin and Fentanyl are, respectively, Schedule I and II controlled substances

## CONCLUSION

**24.** Based on the foregoing, there is probable cause to believe that **COLEMAN** has committed the following federal violations: (1) intentional adulteration of a drug in violation of 21 U.S.C. §§ 331(k) and 333(a)(7); (2) manufacture/possession of controlled substances with intent to distribute in violation of 21 U.S.C. §841(a)(1); (3) holding for sale/dispensing counterfeit drugs in violation of 21 U.S.C. §331(i)(3) and 333(b)(8); and (4) possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

I hereby declare that the above affidavit is true and correct to the best of my knowledge pursuant to the investigation conducted in this case.

Michael Rothbard
Special Agent
Food and Drug Administration,
Office of Criminal Investigations

8

Subscribed and sworn to before me
On this _____ day of September 21, 2019.

_____
JOHN E. OTT
CHIEF UNITED STATES MAGISTRATE JUDGE